**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

KIMBERLY BECK AND TRAVIS LORENTZ,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVES OF CHARLES "GAGE"
LORENTZ, DECEASED,

        Plaintiffs,

vs.                                                                 No. 2:20-CV-1280 MV/JHR

UNITED STATES OF AMERICA, and
ROBERT JOHN MITCHELL, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS A
NATIONAL PARK RANGER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant United States' Motion to Dismiss or Alternatively for Partial Summary Judgment Based on the Discretionary Function Exception to the Federal Tort Claims Act [Doc. 109]. Plaintiff filed a Response [Doc. 121] and Defendant filed a Reply [Doc. 139]. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and will be denied.

## BACKGROUND

On March 21, 2020, Charles "Gage" Lorentz was traveling through Rattlesnake Springs, New Mexico, which is a recreational area in the southwest portion of Carlsbad Caverns National Park. Doc. 1 ¶¶ 11-12.[1] National Park Ranger John Mitchell was in the area responding to a call

---

[1] As explained below, the Court analyzes this Motion under the standard set forth in Federal Rule of Civil Procedure 12(b)(6). *See Murphy v. United States,* No. 20-CV-557, 2020 WL 693917, at *2-3 (D.N.M. Nov. 25, 2020), *modified,* No. 20-CV-557, 2020 WL 7342671 (D.N.M. Dec. 14, 2020) (finding that the court was required to resolve motion to dismiss under Rule 12(b)(6) where defendant argued that the allegations in the complaint fell outside the scope of the discretionary

1

about a possible unlawful camper. *Id.* ¶ 13. Ranger Mitchell observed Mr. Lorentz in his 2017 Ford F-250 truck traveling at a high rate of speed. *Id.* ¶¶ 14-15. He saw Mr. Lorentz hit a traffic sign and then stop at the end of a turn-around. *Id.* Ranger Mitchell turned on his emergency lights and drove up to the truck, where he found Mr. Lorentz standing on the dirt road in front of a pump house building. *Id.* ¶ 16. He instructed Mr. Lorentz to remove his hands from his pockets and Mr. Lorentz complied, leaving his hands resting at his sides. *Id.* ¶¶ 17-19. Mr. Lorentz was wearing tight fitting jeans that could not easily conceal a weapon. *Id.* ¶ 22. After briefly speaking with Mr. Lorentz, Ranger Mitchell decided to place Mr. Lorentz in handcuffs and "sit him down before it turned into anything else." *Id.* ¶ 24. Ranger Mitchell instructed Mr. Lorentz to turn around, but Mr. Lorentz shook his head. *Id.* ¶ 25-26. Mr. Lorentz did not move toward Ranger Mitchell. *Id.* ¶ 27. Mr. Lorentz had put his hands back in his pockets, so Ranger Mitchell again instructed him to take his hands out. *Id.* ¶ 28. Less than a second after giving this instruction and with no warning, Ranger Mitchell deployed his taser on Mr. Lorentz. *Id.* ¶ 30, 36. When Ranger Mitchell deployed his taser, Mr. Lorentz was standing still. *Id.*

At the moment that Ranger Mitchell deployed his taser, his body-worn camera stopped recording. *Id.* ¶ 44. In total, twenty-six seconds of footage are missing from Ranger Mitchell's body-worn camera footage. *Id.* ¶ 49.[2] Ranger Mitchell reported later that after he deployed his

---

function exception). Accordingly, the Court accepts as true all well-pleaded factual allegations in the complaint and views those allegations in the light most favorable to Plaintiff and accepts all reasonable inferences in Plaintiff's favor. *See Smith v. United States,* 561 F.3d 1090, 1097 (10th Cir. 2009).

[2] The Complaint does not present any allegations as to why Ranger Mitchell's body-worn camera stopped recording when he deployed his taser. Doc. 1 ¶ 44 ("At the exact moment Defendant Mitchell tased Gage, his body-worn camera stopped recording, malfunctioned, or else the video has been edited, clipped, destroyed, or not produced in response to Plaintiff's public records request."). Defendant provides no explanation for the missing footage.

taser, he closed the distance between himself and Mr. Lorentz in order to "bring the fight" to Mr. Lorentz. *Id.* ¶ 46. When the body-worn camera resumed filming, the footage shows Ranger Mitchell and Mr. Lorentz on the ground. *Id.* ¶ 50. Ranger Mitchell had by then unholstered his firearm and was gripping it with both hands. *Id.* ¶¶ 51-52. Mr. Lorentz attempted to stand up, but Ranger Mitchell pushed him onto the ground on his back. *Id.* ¶¶ 53-54. Ranger Mitchell then shot Mr. Lorentz in the leg. *Id.* ¶ 120. After Ranger Mitchell shot Mr. Lorentz in the leg and while Mr. Lorentz was lying on his back, Ranger Mitchell pinned Mr. Lorentz down with one hand. *Id.* ¶ 55. With his other hand, he pointed the gun at Mr. Lorentz's chest. *Id.* ¶ 56. He then positioned himself directly over Mr. Lorentz and shot him in the chest. *Id.* ¶ 57. This shot later proved to be fatal. *Id.*

After shooting Mr. Lorentz in the chest, Ranger Mitchell returned to his vehicle, where he radioed dispatch to report shots fired. *Id.* ¶ 60. He then returned to where Mr. Lorentz was lying motionless, handcuffed him, and left him lying on the ground face down. *Id.* Ranger Mitchell again returned to his vehicle and stayed there for fifteen minutes before walking back to Mr. Lorentz and applying gauze to the gunshot wound on his chest. *Id.* ¶¶ 68-72. He applied the gauze on Mr. Lorentz's chest for less than thirty seconds and never rendered any further aid or performed CPR. *Id.* ¶¶ 74-75. When Eddy County Sheriff's deputies arrived on scene, Ranger Mitchell reported to them that he himself was fine and that "[Gage] got a couple punches on [him] but that's it." *Id.* ¶ 75. It was not until approximately nineteen minutes after the shooting that Mr. Lorentz received any form of CPR from other officers who had arrived on the scene. *Id.* ¶ 78.

Plaintiffs bring two claims against Defendant United States under 28 U.S.C. § 1346(b)(1), known as the Federal Tort Claims Act ("FTCA"). Count III of the Complaint alleges that the United States is liable because Ranger John Mitchell committed battery and false imprisonment against Mr. Lorentz. Doc. 1 at pp 114-124. Count IV of the Complaint alleges that Ranger Mitchell

3

breached his duty to act as a reasonable officer under the circumstances and negligently shot and killed Mr. Lorentz. Doc. 1 at pp. 125-132. Defendant moves to dismiss Count IV pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.

**LEGAL STANDARD**

I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

The primary dispute between the parties is whether Defendant United States has waived sovereign immunity under the FTCA. A party bringing suit against the United States bears the burden of proving that the government has waived its sovereign immunity. *See James v. United States,* 970 F.2d 750, 753 (10th Cir. 1992). The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538 (1980). When reviewing a challenge to its subject matter jurisdiction, the Court does not assume the truthfulness of the complaint's factual allegations, but instead has wide discretion to consider affidavits and other documents to resolve disputed jurisdictional facts. *See Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). Thus, a Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion, can include references to evidence extraneous to the complaint without converting it to a Rule 56 summary judgment motion. *See Wheeler v. Hurdman,* 825 F.2d 257, 259, n.5 (10th Cir. 1987). However, when jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the case's merits, the Court must resolve the motion under either Rule 12(b)(6) or Rule 56. *Franklin Sav. Corp v. United States,* 180 F.3d 1124, 1129-30 (10th Cir. 1999). The jurisdictional question is considered intertwined with the merits of the case when, as here, the court's subject matter jurisdiction is conditioned upon the same statute that provides the substantive claim in the case. *See Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 978 (10th Cir. 2002). Moreover, the Tenth Circuit has found that "the determination of whether the FTCA

4

excepts the government's action from its waiver of sovereign immunity involves both jurisdiction and merits issues" and therefore should be resolved under Rule 12(b)(6) or Rule 56. *Bell v. United States,* 127 F.3d 1226, 1228 (10th Cir. 1997).

As explained below, the jurisdictional matter in this case ultimately turns on the sufficiency of the Plaintiffs' pleadings. Accordingly, the Court will resolve the Motion under Rule 12(b)(6). Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does

not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

## II.     The Federal Tort Claims Act and the Discretionary Function Exception

At issue in this case is whether the discretionary function exception to the FTCA waiver of sovereign immunity applies to Ranger Mitchell's conduct. The FTCA states that the federal district courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, under the discretionary function exception, the government retains its immunity from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). In *Berkovitz v. United States*, 486 U.S. 531 (1988), the

6

Supreme Court established a two-part test for determining whether the challenged conduct falls within the discretionary function exception. *Knezovich v. United States*, 82 F.4th 931, 936 (10th Cir. 2023).

Under the first step of the *Berkovitz* test, the Court determines "whether the challenged conduct involves an element of judgment or choice, in which case it is discretionary and falls within the language of the exception." *Id.* at 937 (citations omitted). If, instead, the court finds at step one that "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception does not apply. *Kiehn v. United States*, 984 F.2d 1100, 1102 (10th Cir. 1993) (citation omitted). If, at step one, the court determines that the conduct involves discretionary judgment, the court must move on to step two "to determine whether that judgment is the kind that the discretionary function exception was designed to shield," as this exception "protects only those discretionary actions or decisions which are based on considerations of public policy." *Id.* Whether the exception applies to discretionary actions thus turns on whether the nature of those actions can be said to "implicate public policy concerns or [be] susceptible to public policy analysis." *Knewzovich*, 82 F.4th at 937. The Court must "presume that a government agent's discretionary actions are grounded in policy, and it is up to the challenger to allege facts showing that the actions were actually not policy-oriented." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016).

Notably, the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Accordingly, "in applying the discretionary function exception, [the Court does] not consider whether the decision or nondecision was negligent or wrong." *Duke v. Dep't of Agriculture*, 131 F.3d 1407, 1410 (10th Cir. 1997). "[T]he question of

negligence is irrelevant" when considering whether the discretionary exception applies. *Hurst v. United States*, No. 17-CV-189, 2018 WL 10529521, at *1 (E.D. Okla. Apr. 12, 2018).

Finally, "[t]he discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of [its] overall burden to establish subject matter jurisdiction." *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998); *accord Knewzovich*, 82 F.4th at 927 ("Application of the discretionary function exception presents a threshold jurisdictional determination."). "If the challenged decision implicates [public policy] concerns, the discretionary function exception applies, and the district court lacks jurisdiction to consider the claim." *Id.*

## DISCUSSION

Defendant argues that Ranger Mitchell's actions fall under the discretionary function exception to the FTCA's waiver of the United States' sovereign immunity and that, consequently, the Court has no jurisdiction over the claim. Doc. 109 at 1. Plaintiffs assert that the exception does not apply because Ranger Mitchell violated Mr. Lorentz's Fourth Amendment rights by using excessive force and, therefore, his actions were not discretionary. Doc. 121 at 7. There is a circuit split on the question of whether the discretionary function exception applies when plaintiffs "plausibly alleg[e] that the [federal employee's] conduct exceeded the scope of [his] constitutional authority." *Loumiet v. United States,* 828 F.3d 935, 946 (D.C.C. 2016). "Most circuits have held that conduct is not discretionary when it 'exceeds constitutional bounds.'" *Martinez v. United States,* 822 F. App'x 671, 676 (10th Cir. 2020).[3] The Tenth Circuit, however, has yet to resolve this

---

[3] *See Limone v. United States,* 579 F.3d 79, 102 (1st Cir. 2009) (FBI agents' conduct was "unconstitutional and, therefore, not within the scope of the discretionary function exception"); *Myers & Myers, Inc. v. U.S. Postal Serv.,* 527 F.2d 1252, 1261 (2d Cir. 1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside its scope of delegated authority."); *U.S. Fid. & Guar. Co. v. United States,* 837 F.2d 116, 120 (3d Cir.

question. *Id.* Although the government urges the Court to adopt the minority view, for the reasons set forth herein, the Court follows the "clear weigh of circuit authority" and holds that the discretionary function exception does not apply where a plaintiff plausibly alleges that a federal official engaged in unconstitutional conduct. *Loumiet,* 828 F.3d at 944.

In support of its argument that the Court should adopt the minority view of the Seventh and Eleventh Circuits, the government cites to two decisions reached by district courts within the Tenth Circuit holding that the discretionary function exception applies to unconstitutional conduct if the plaintiff cannot point to a specific statutory or regulatory violation. Doc. 109 at 12 (citing *Ashley v. United States,* No. 20-CV-154, 2020 WL 8996805, at *9 (D.N.M. Nov. 2, 2020) (Skavdahl, J.); *Ramirez v. Utah,* No. 2:18-CV-00176, 2020 WL 1955366, at *28-32 (D. Utah Apr. 23, 2020) (Ebel, J.)). These opinions, however, are not binding precedent and the Court finds more persuasive the reasoning of the circuit courts that have reached a contrary conclusion.

The FTCA "was the offspring of a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work." *Dalehite v. United States,* 346 U.S. 15, 24 (1953). Recognizing this, the Supreme Court has directed courts to

---

1988) ("[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation."); *Sutton v. United States,* 819 F.2d 1289, 1293 (5th Cir. 1987) (conduct "does not fall within the discretionary function of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or Constitution"); *Raz v. United States,* 343 F.3d 945, 948 (8th Cir. 2003) (FBI agents' surveillance activities fell outside of discretionary function exception because plaintiff alleged they were conducted in violation of his First and Fourth Amendment rights); *Nurse v. United States,* 226 F.3d 996, 1002 (9th Cir. 2000) (discretionary function exception would not apply if plaintiff showed that "policy-making defendants promulgated discriminatory, unconstitutional policies"); *Medina v. United States,* 259 F.3d 220, 225 (4th Cir. 2001) (federal officials do not have discretion to violate constitutional rights); *but see Kiiskila v. United States,* 466 F.2d 626, 627-28 (7th Cir. 1972) (concluding that discretionary function exception applied to conduct that was "constitutionally repugnant"); *Shivers v. United States,* 1 F.4th 924, 930-35 (11th Cir. 2022) (holding that there is no "constitutional claims exclusion to the statutory discretionary function exception").

adopt an interpretation of the FTCA that "will carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy." *Id.* at 31. Consistent with this edict, courts have found that, "[i]n general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse,* 226 F.3d at 1002; *see also Kiehn*, 984 F.2d at 1102. The term "legal mandate" necessarily includes those mandates emanating from the Constitution and, accordingly, conduct cannot be discretionary if it runs afoul of the Constitution. As found by a majority of circuit courts, the decisions of federal officials are "necessarily circumscribed by the rules that limit the bounds of their authority," including constitutional rules. *Loumiet,* 828 F.3d at 944 (internal quotations omitted). Importantly, a constitutional rule "circumscribes the government's authority even on decisions that otherwise would fall within its lawful discretion." *Id.* Thus, when conduct falls outside of the official's constitutional authority, it cannot be "discretionary" under § 2680(a).  Indeed, to hold otherwise "would yield an illogical result: the FTCA would authorize tort claims against the government for conduct that violates the mandate of a statute, rule, or policy, while insulating the government from claims alleging on-duty conduct so egregious that it violates the more fundamental requirements of the Constitution." *Id.* at 944-45. Accordingly, when a plaintiff plausibly alleges that federal employees have engaged in unconstitutional conduct, the Court must find at step one of the *Berkovitz* analysis that the conduct was not discretionary, and the FTCA's waiver of sovereign immunity applies. *Kiehn,* 984 F.2d at 1102 (if, at step one of the *Berkowitz* test, the court finds that a course of action is proscribed, then the federal employee's conduct is not discretionary).

Defendant argues that a carveout to the discretionary function exception for unconstitutional conduct would amount to a waiver of sovereign immunity and notes that "when waiving the Government's sovereign immunity, Congress must speak unequivocally." *Id.* at 13

10

(quoting *F.A.A. v. Cooper,* 566 U.S. 284, 299 (2012)). Because the FTCA has no express carveout for unconstitutional conduct, Defendant asserts, there can be no waiver of sovereign immunity for such conduct. This argument is unconvincing. In creating the exception for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government," § 2680(a) does not expressly define the term "discretionary function." As a result, courts have been required to interpret its meaning. *See Kiehn,* 984 F.2d at 1102 ("The question before this court is the scope of the discretionary function exception."). Assuming this interpretative role, the Supreme Court held that a federal employee cannot be said to be performing a "discretionary function" under § 2680(a) when they violate a federal statute or regulation. *Berkovitz,* 486 U.S. at 536. Defendant does not object to this "carveout" for statutory violations even though it is not one expressly stated in the statute. Yet, Defendant takes issue with the next logical step of that interpretation, namely, that a federal employee does not have discretion to violate a constitutional mandate. Thus, Defendant implicitly accepts that courts may interpret the term "discretionary function" in § 2680(a) to define the scope of Congress's waiver of sovereign immunity, but objects to the court's use of its interpretative authority only where the outcome would not be in its favor.

Next, Defendant argues that "the FTCA is a vehicle for redress for common law tort claims, not constitutional tort claims" and that a *Bivens* action is the appropriate avenue for constitutional tort claims. Doc. 109 at 13. Relying on the Eleventh Circuit's decision in *Shivers,* Defendant argues that plaintiffs "cannot circumvent the limitations on constitutional tort actions under *Bivens*" by recasting the claim as one under the FTCA." *Id.* (quoting *Shivers,* 1 F.4th at 931). But as the D.C. Circuit concluded, this argument "miscast[s] the relationship between the FTCA state-law torts and *Bivens* claims." *Loumiet,* 828 F.3d at 945. Constitutional claims for damages against individual

11

federal officers are cognizable only under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). By contrast, the FTCA "provides a method to enforce state tort law against the federal government itself." *Loumiet,* 828 F.3d at 945. When, in the context of contesting the discretionary function exception, a plaintiff identifies conduct as unconstitutional, they do not convert their FTCA action against the government into a constitutional damages claim against individual federal officers. State tort law, rather than the Constitution, is still the source of the cause of action. Accordingly, if there is no state law analogue for the FTCA claim, the plaintiff has no remedy under the FTCA, regardless of whether the conduct on which the claim is based is unconstitutional. *See Raz,* 343 F.3d at 947-48 (holding first that the plaintiff's allegations were "sufficient to state cognizable tort claims under Arkansas law" and second that the alleged conduct fell outside the discretionary function exception because it was unconstitutional). Thus, to hold that unconstitutional conduct is not "discretionary" under § 2680(a) neither expands the reach of the FTCA nor holds individual federal officers accountable in a way inconsistent with *Bivens*. *See Limone,* 579 F.3d at 102 n.13 (considering constitutionality of FBI agents' conduct "as negating the discretionary function defense" and not with respect to the plaintiffs' underlying causes of action); *Medina,* 259 F.3d at 223, 226 (holding that the FTCA does not create new causes of action, but that federal officials have no discretion to violate the Constitution).

The misguided nature of Defendant's argument that FTCA claims based on unconstitutional conduct are authorized only if the United States, as a private person, could be held liable under the relevant state law *and* the individual officers could be held liable under *Bivens* is well illustrated by applying that argument to FTCA claims based on conduct that violates a federal statute, regulation, or policy. In that context, there is no prerequisite that the statute, regulation, or policy allegedly violated by the conduct of federal employees authorize plaintiffs to bring a cause

of action against those federal employees. It would be absurd and, indeed, contrary to the purpose of the FTCA, to hold that, despite the violation, the conduct must fall within the discretionary function exception for the sole reason that the relevant statute does not itself authorize a cause of action. *See* 28 U.S.C. § 1346(b)(1) (authorizing claims "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*"). By the same logic, it would be absurd and, indeed, contrary to the purposes of the FTCA, to hold that unconstitutional conduct falls within the discretionary function exception simply because the relevant constitutional provision itself does not authorize a cause of action.

In sum, consistent with the purpose and plain language of the FTCA, in addition to controlling and persuasive precedent interpreting that language, the Court concludes that unconstitutional conduct falls outside the scope of the discretionary function exception. Accordingly, the Court now turns to step one of the *Berkovitz* test to determine whether Plaintiff has plausibly alleged that the conduct at issue was unconstitutional, and thus non-discretionary, for purposes of the FTCA's waiver of sovereign immunity. *Loumiet,* 828 F.3d at 946 (holding that when a plaintiff "plausibly alleges" that the federal employee's conduct was unconstitutional, the court must find that the employee was not acting within their lawful discretion for purposes of § 2680(a)). Accepting as true the well-pleaded factual allegations in the Complaint, viewing those allegations in the light most favorable to Plaintiffs, and accepting all reasonable inferences in Plaintiffs' favor, *see Franklin Sav. Corp.,* 180 F.3d at 1129-30; *Smith,* 561 F.3d at 1097, the Court finds that Plaintiffs have plausibly alleged that Ranger Mitchell violated Mr. Lorentz's Fourth Amendment right to be free from unreasonable seizures.

"Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." *Morris v. Noe,* 672 F.3d 1185, 1195 (10th Cir. 2012). Under this standard, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interest" against "the countervailing governmental interests at stake. *Graham v. Connor,* 490 U.S. 386, 396 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. In answering this question, the Court considers several factors, including (1) the severity of the crime at issue, (2) whether the subject poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee. *Id.* at 396. The Court must judge the reasonableness of a particular use of force "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Thus, if an officer "reasonably, but mistakenly" believed a suspect was likely to fight back, "the officer would be justified in using more force than in fact needed." *Saucier v. Katz,* 533 U.S. 194, 205 (2001), *limited in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). Ultimately, in determining the reasonableness of an officer's use of force, courts look at the totality of the circumstances, including whether the officer's "own reckless or deliberate conduct during the seizure created the need for such force." *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695 (10th Cir. 1995); *see also Allen v. City of Muskogee, Okla.,* 119 F.3d 837, 840 (10th Cir. 1997) (a jury could reasonably find that officers unreasonably created the need for force when they approached an armed and suicidal individual in a vehicle and fired twelve rounds into the vehicle).

Here, all the *Graham* factors weigh in Plaintiffs' favor. First, Ranger Mitchell was investigating a traffic offense. This was not an inherently violent offense and, by the time Ranger Mitchell encountered him, Mr. Lorentz was no longer in the truck and, accordingly, the risk that he would continue to engage in dangerous driving was minimal. Accordingly, the Court cannot conclude that tasing, shooting, and ultimately killing Mr. Lorentz was an appropriate use of force for the arrest of a traffic offense. *See Wagner v. Lieutenant James Jones,* No. 13-CV-771, 2015 WL 13662791, at *4 (D.N.M May 8, 2015) (a "leg sweep" maneuver executed during arrest was likely not warranted for arrest of Plaintiff for a traffic offense, namely driving under the influence of alcohol). Furthermore, Mr. Lorentz did not appear to pose a threat to Ranger Mitchell or any bystanders. Mr. Lorentz was wearing tight fitting pants that could not have concealed a weapon and, in fact, he was unarmed. Additionally, Ranger Mitchell reported that he "took the fight to" Mr. Lorentz and initiated the physical struggle, even though Mr. Lorentz made no movements towards him. Thus, it appears that Ranger Mitchell suddenly and unreasonably escalated the encounter without any objective indications that Mr. Lorentz posed a threat. *See Sevier,* 60 F.3d at 699; *Wagner,* 2015 WL 13662791, at *4 (the second *Graham* factor weighed heavily in Plaintiff's favor because "nothing in the Complaint suggest[ed] that Plaintiff posed a threat to the safety of the officers or others"). Lastly, Mr. Lorentz was not actively resisting arrest. At most, he shook his head "no" when Ranger Mitchell asked him to turn around and did not take his hands out of his pockets. However, Ranger Mitchell tased Mr. Lorentz within seconds of asking him to take his hands out of his pockets and did not give him a meaningful chance to comply. This was insufficient to warrant tasing Mr. Lorentz, engaging in a physical struggle with him, and ultimately fatally shooting him. *See Myers v. Brewer,* 773 F. App'x 1032, 1037 (10th Cir. 2019) (complaint sufficiently alleged a Fourth Amendment violation even where plaintiff did not "immediately

comply" with sheriff's deputies orders because deputies deployed a beanbag round only eight seconds after issuing command). Lastly, even assuming that Ranger Mitchell acted reasonably when he tased Mr. Lorentz and shot him in the leg, it was objectively unreasonable for him to shoot Mr. Lorentz in the chest once he had already pinned him down on his back and subdued him. *See Perea v. Baca,* 817 F.3d 1198, 1203 (10th Cir. 2016) ("Although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not.").

Because all three *Graham* factors weigh in Plaintiffs' favor, the circumstances here are "sufficient to indicate a Fourth Amendment violation." *Myers,* 773 F. App'x at 1037. Plaintiffs have therefore plausibly alleged that Ranger Mitchell exceeded his constitutional authority and acted without discretion when he tased, shot, and killed Mr. Lorentz. Accordingly, the Court finds at step one of the *Berkovitz* analysis that the conduct was not discretionary. Based on its finding at step one, the Court need not move to step two of the *Berkovitz* test to address whether Ranger Mitchell's actions implicated policy concerns.

## CONCLUSION

Adopting the view taken by most circuit courts, the Court holds that the discretionary function exception to the FTCA's waiver of sovereign immunity does not apply where plaintiffs plausibly allege that a federal employee engaged in unconstitutional conduct. Here, Plaintiffs have alleged sufficient facts to plausibly allege that Ranger Mitchell violated Mr. Lorentz's Fourth Amendment right to be free from unreasonable seizures. Accordingly, Ranger Mitchell acted beyond his discretionary authority, and the discretionary function exception does not apply. Because the FTCA's waiver of sovereign immunity applies, the Court has jurisdiction over this matter and Defendant's Motion to Dismiss must be denied.

16

**IT IS THEREFORE ORDERED THAT** Defendant United States' Motion to Dismiss or Alternatively for Partial Summary Judgment Based on the Discretionary Function Exception to the Federal Tort Claims Act [Doc. 109] is **DENIED**.


DATED this 27th day of April 2026.

_____
MARTHA VAZQUEZ
Senior United States District Judge